UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY MOSES MITCHELL, aka HENRY C. HAYES,<br><br>Plaintiff,<br><br>v.<br><br>K. YOCHUM,<br><br>Defendant. | Case No. 23-cv-00461-WHO (PR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Dkt. No. 20 |

## INTRODUCTION

Plaintiff Henry Moses Mitchell (aka Henry C. Hayes) alleges that defendant K. Yochum, a prison guard, used excessive force against him when she closed his cell's food port door. Yochum has filed a motion for summary judgment. Mitchell's constitutional rights were not violated: the undisputed material facts show that the port door never made physical contact with Mitchell and there are no facts to support a claim of constructive force in which threats and intimidation were used to gain control over Mitchell or prevent his resistance. And even if a constitutional right had been violated, Yochum is entitled to qualified immunity because it was not so clearly established that she should have known that she was violating it when she closed the food port door. Accordingly, her motion for summary judgment is GRANTED.

# BACKGROUND

The material factual allegations are undisputed. Mitchell, a California state prisoner, alleges that on December 9, 2022, Yochum, a correctional officer at Pelican Bay State Prison, "slammed the solid steel tray port door directly in the left ear of Plaintiff." (Compl., Dkt. No. 1 at 3.) In my initial review of Mitchell's complaint, I read his allegations as saying that the port door actually came into physical contact with him. I was mistaken. There was no physical contact between the port door and Mitchell, as he admits in his deposition testimony:

> Q: So — and then she slammed it. So, was your ear — let me rephrase that. Was any contact made with the metal port and your ear?
>
> A: No. Just the percussion from the door being slammed. Just the percussion.
>
> Q: Okay, so at no point did this port actually, like, hit your head or your ear?
>
> A: There's no possible way because, again, there's five and half inches that goes — it's recessed inside the wall five and a half inches.
>
> Q: Okay. So, I just wanted to get clarification on that. So, now I understand that you — and correct me if I'm wrong. But you were leaning in near the port so that you could hear Officer Yochum, correct?
>
> A: Yes.
>
> Q: Okay. And — but when she slammed it, it didn't actually make contact with your head or ear, correct?
>
> A: No.
>
> Q: But the noise is what reverberated loudly; is that correct?
>
> A: That is correct.
>
> Q: Okay. And so, your claim in this lawsuit is that she, Officer Yochum, slammed the cuff port so loudly that it caused a very loud noise?

A:   No, it didn't cause a very loud noise.  It caused an increased piercing into my limited hearing which caused me headaches —

(MSJ, Deposition Transcript, Dkt. No. 20-2 at 4-5.)

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c).  The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

3

**DISCUSSION**

When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. "The Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. *Id.* at 9-10. An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim. *Id.* at 9.

A district court has considered the exact issue presented in this case: it held that "[s]lamming a food port hatch loudly does not constitute excessive force" because "it is not an application of power, violence, or pressure against plaintiff, nor could it put plaintiff in reasonable apprehension for his safety the way a threat would." *Kamilchu v. County of Sacramento*, No. 2:21-cv-02245 DB P, 2023 WL 4187871, at *3 (E.D. Cal. June 26, 2023). The court reasoned:

> Black's Law Dictionary defines 'force' as '[p]ower, violence, or pressure directed against a person or thing.' Force, *Black's Law Dictionary* (11th ed. 2019). 'Threats and intimidation to gain control or prevent resistance' can also constitute force. Constructive force, *Black's Law Dictionary* (11th ed. 2019); *see, e.g., Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002) (plaintiff successfully pleaded an excessive force claim, where officer aimed a firearm at plaintiff's head at close range while plaintiff was unarmed). This court has defined excessive force as 'that degree of force which is in excess of what a reasonable and prudent officer would apply, considering the need presented, the extent of injury inflicted, and any alternative means available to control the detained person.' Jury Instructions,

4

*Adams v. Speers*, No. CV F 02-5741 LJO DLB, 2009 WL 1106955, at *29 (E.D. Cal. Feb. 5, 2009).

*Id.* The court concluded that even if the allegations were broadly construed as the application of physical force, it would constitute "a de minimis use of physical force, one that is not 'repugnant to the conscience of mankind.' " *Id.*

The reasoning in *Kamilchu* is persuasive. And even under a broad interpretation of the undisputed material facts, the allegations do not support a constructive force claim in which threats and intimidation were used to gain control or prevent resistance. *Robinson*, 278 F.3d at 1014 (plaintiff successfully pleaded an excessive force claim, where officer aimed a firearm at plaintiff's head at close range while plaintiff was unarmed).

Mitchell's contentions to the contrary do not show a genuine dispute of material fact. He alleges that the percussive force of the door being closed was "an application of power, violence, or pressure" sufficient to constitute excessive force under the Eighth Amendment and that he suffers from "hearing and mobility limitations." (Opp., Dkt. No. 21 at 3.) But actual physical force must be applied to a person, or constructive force applied in the form of threats and intimidation to gain control over Mitchell or prevent his resistance (such as aiming a firearm at a person at close range while the person was unarmed) in order to constitute excessive force. Neither occurred here.

Mitchell's cases are not on point. (Opp., Dkt. No. 21 at 2.) *Hope v. Pelzer* is not an excessive force case; it is an examination of whether plaintiff was subjected to cruel and unusual punishment when prison guards twice handcuffed him to a hitching post to sanction him for disruptive conduct. 536 U.S. 730, 733 (2002). And *Cornwell v. Dahlberg* addressed a very different issue, discussing in part whether being forced to lie on muddy wet ground could give rise to an excessive force claim under the Fourth or Eighth Amendment. 963 F.2d 912, 916 (6th Cir. 1992). That out of circuit case is not helpful in considering the issues here.

Yochum also contends that she is entitled to qualified immunity. (MSJ, Dkt. No. 20 at 7.) I agree. The defense of qualified immunity protects "government officials . . . from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Under *Saucier v. Katz*, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity. If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id.* at 205. Although the *Saucier* sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. *See Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009).

Yochum is entitled to qualified immunity because the undisputed alleged facts do not show that she violated a constitutional right. As discussed above, there are no factual allegations that there was physical contact or constructive force. There was no excessive force. Because it is clear that no constitutional right was violated, there is no need to proceed to the second *Saucier* step of inquiry. But if some constitutional right had been violated, it was certainly not so clearly established that when Yochum slammed the cell port door, she should have known that she was violating Mitchell's constitutional right.

**CONCLUSION**

Yochum's motion for summary judgment is GRANTED. (Dkt. No. 20.) The Clerk shall terminate all pending motions, enter judgment in favor of defendant Yochum, and close the file.

**IT IS SO ORDERED.**

Dated: March 6, 2025



WILLIAM H. ORRICK
United States District Judge